IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ELVIS LEE PATRICK                                                                    PLAINTIFF

v.                                    CIVIL NO. 08-5114

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on October 7, 2005, alleging an inability to work since September 10, 2005, due to back pain, chronic headaches, pain in both feet and ankles, depression, agoraphobia with panic attacks, and the inability to read, write or do arithmetic.[1] (Tr. 21, 88, 93, 228-234). An administrative hearing was held on October 2, 2007, at which plaintiff appeared with counsel and testified. (Tr. 248-327). Plaintiff's sister also testified at the hearing. (Tr. 297).

---

[1] At the administrative hearing, plaintiff amended his alleged onset date to September 25, 2006. (Tr. 11, 272).

By written decision dated November 30, 2007, the ALJ found that during the relevant time period plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found plaintiff's severe impairments to include borderline intellectual functioning, depression and chronic musculoskeletal pain. (Tr. 14). However, after reviewing all of the evidence presented, she determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found plaintiff retained the following residual functional capacity (RFC):

> ...to lift and carry 50 pounds occasionally and 25, pounds frequently, stand and walk 8 hours out of 8, sit 6 hours out of 8, and push and pull as limited by his ability to lift and carry. He cannot perform a job that requires him to drive. He is capable of performing only work that does not require reading or mathematical ability above the basic level. He is capable of carrying out only oral instructions with concrete, direct, and specific supervision; he cannot carry out written instructions. He can only perform work that is not complex, has few variables, and requires little judgment, and can be learned by rote. He must have only superficial contact with the public and co-workers.

(Tr. 17). With the help of a vocational expert, the ALJ determined plaintiff could perform other work as a packing machine operator, a sewing machine operator, a press operator, a poultry deboner and a poultry eviscerator. (Tr. 28).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, denied that request on March 10, 2008. (Tr. 2-4). Subsequently, plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Doc. 10, 11).

**II.    Evidence Presented:**

At the administrative hearing on October 2, 2007, plaintiff testified he was thirty-three

AO72A
(Rev. 8/82)

years of age. (Tr. 255). Plaintiff testified he quit school in the seventh grade. (Tr. 261). Plaintiff testified he was in special education classes. (Tr. 278). Plaintiff testified he was unable to read and could only write his name. (Tr. 278). Plaintiff testified he could not add or subtract. (Tr. 278). Later in the hearing, plaintiff testified he could do some simple addition but could not multiply and divide. (Tr. 281). Plaintiff testified he can read some simple words and that he knows his numbers. (Tr. 280-281). Plaintiff testified he knows the names of the months but does not know their order. Plaintiff testified he knows his date of birth and can read the numbers on a gasoline pump. Plaintiff testified he could not read a recipe, a city map or a telephone book. (Tr. 282). Plaintiff knew were he lived but did not know his address. The record reflects plaintiff's past relevant work consists of work as a chicken catcher, a lumbar stacker and a brick mason helper. (Tr. 90-103, 274-276).

The court notes the record reflects plaintiff did not seek treatment during the relevant time period of September 25, 2006, the amended alleged onset date, through the date of the decision. The record does reflect plaintiff has sought the following medical treatment.

Plaintiff entered the Washington Regional Medical Center emergency room on August 14, 2005, complaining of right hand pain and swelling. (Tr. 198). Plaintiff reported a board fell on top of his hand four days ago at work. X-rays of his right hand revealed no acute osseous or radiographic abnormalities. (Tr. 202). Plaintiff denied taking any medications. (Tr. 198). Plaintiff was diagnosed with a metacarpal fracture. Plaintiff was given twenty Darvocet –100 tablets. Plaintiff was to remain off work until he was seen by an orthopedic doctor the following week.

On September 2, 2005, plaintiff returned for a follow-up appointment of his right

metacarpal fracture. (Tr. 161). Dr. John P. Park noted x-rays revealed excellent callus formation and good healing at the site. Dr. Park noted clinically plaintiff had no rotary deformity. Dr. Parks noted plaintiff had some firmness around the mid metacarpal area as anticipated. Plaintiff's range of motion was continuing to improve at his metacarpal phalangeal joints. Dr. Park noted plaintiff was going to continue working on range of motion. Dr. Park noted plaintiff was already back working full grip strength. Dr. Park noted plaintiff experienced some aching but opined that would gradually resolve over time.

On December 1, 2005, plaintiff underwent a mental status and evaluation of adaptive functioning evaluation performed by Gene Chambers, PhD. (Tr. 162-166). Dr. Chambers noted plaintiff was brought to the evaluation by a friend. Plaintiff reported he has never had a driver's license and that he does not drive. Later, plaintiff reported he had some DUI's in the past and stated "I'm not that stupid." Upon observation, Dr. Chambers noted plaintiff was wearing soiled clothing, had dirty hands, had hair that had not been washed and looked essentially unkempt. Plaintiff reported his alleged impairments as back, feet, ankle and hand pain. Plaintiff also complained of headaches and depression. Plaintiff reported he was not taking any medications.

When describing his illness, plaintiff states "I hurt all the time when I'm working. My right hand will swell up and I can't even use it." Plaintiff reported he broke his hand while on the job and still had problems with it. Plaintiff also reported ankle problems and that his back gave him discomfort from time to time. Plaintiff reported being around loud noises gave him headaches. He reported he had had less headaches since he quit working four to six months ago. When asked about depression, he reported it started when his wife left about a year ago. Plaintiff reported he has three children and his wife brings them to visit occasionally. Plaintiff

-4-

reported "I don't like being around people. I am all messed up."

Dr. Chambers noted plaintiff was not helpful in terms of being an informant. Plaintiff did not know ages and could not remember dates. Plaintiff reported he was in special education classes and never learned to read, write or perform arithmetic. Plaintiff reported he had been married for ten years but was separated from his wife. Plaintiff reported he had been arrested once for DWI and public intoxication. Plaintiff reported he smoked a package of cigarettes a day. Plaintiff reported he had been drinking a case of beer per day for a two year period of time but stopped drinking since his wife left. Plaintiff denied the use of recreational drugs.

Upon examination, Dr. Chambers noted plaintiff was cooperative, but appeared to exhibit a dull mentality. Plaintiff's stream of mental activity was spontaneous and reasonably organized. Plaintiff reported thinking he hears someone talking to him when there is no one there, but denied visual hallucinations. Dr. Chambers noted plaintiff's mood was dysthymic and his affect was constricted. Plaintiff reported his energy was all messed up since he started smoking. Plaintiff reported his appetite was alright and that he slept "pretty good." Plaintiff's leisure activities included hunting and fishing. Dr. Chambers estimated plaintiff's IQ to be 71-79. Plaintiff was diagnosed with Axis I: major depression, single episode; Axis II: borderline intellectual functioning; Axis III: deferred to physician's report; Axis IV: problems with primary support group, educational problems, occupational problems; and Axis V: GAF 52. Dr. Chambers noted plaintiff was not receiving treatment at present and opined plaintiff could benefit from medication, as well as, supportive counseling during the course of the next twelve months.

Regarding an evaluation of adaptive functioning, Dr. Chambers noted plaintiff

communicated effectively and was able to make himself understood. Dr. Chambers noted plaintiff's enunciations at times were difficult and opined plaintiff was limited by his lack of education. With regard to social functioning, Dr. Chambers noted plaintiff lived alone in a housetrailer and was checked on by his mother-in-law who also did his shopping. Plaintiff reported he sees his siblings every once in a while but spends most of his time by himself. Dr. Chambers noted plaintiff was dependent on others for transportation as well as shopping assistance. As for personal responsibility, plaintiff reported no difficulties bathing or dressing himself; however, Dr. Chambers noted plaintiff did not do a good job taking care of his personal needs on the day of the evaluation. Dr. Chambers noted plaintiff does not drive, own a checkbook and has problems making change. Plaintiff reported he could not do household chores because he was in pain all of the time. With regard to physical development, Dr. Chambers did not observe any physical problems or limitations during the evaluation. Plaintiff's concentration, persistence and pace were found to be commensurate with his level of intellectual functioning. Dr. Chambers opined plaintiff was as open and honest as he was capable in the setting and found no evidence of exaggeration or malingering.

On December 2, 2005, plaintiff underwent a consultative general physical examination performed by Dr. Randy D. Conover. (Tr. 167-173). Plaintiff reported he was unable to work due to back pain, weak ankles and right wrist pain and swelling. (Tr. 167). Plaintiff also reported chronic headaches when he was around loud noises. (Tr. 169). With the exception of a tender wrist to palpation, Dr. Conover found plaintiff had full range of motion in his spine and extremities. (Tr. 170). Plaintiff's gait and coordination were within normal limits and, with the exception of ninety-five percent grip strength, he had full limb function. (Tr. 171). Plaintiff was

oriented to time, person and place and Dr. Conover found no evidence of psychosis. After reviewing x-rays, Dr. Conover found no increased subchondral sclerosis, no osteophytes and no decrease in joint space in plaintiff's left and right ankle and foot. (Tr. 172). Dr. Conover diagnosed plaintiff with hypertension, history of depression, chronic headache, mild chronic back pain, mild chronic ankle pain and tendonitis of the right wrist. (Tr. 173). Dr. Conover opined plaintiff could sit, handle, finger, see, hear and speak. (Tr. 173). Dr. Conover opined plaintiff's ability to walk, stand, lift and carry might be mildly hindered secondary to plaintiff's diagnoses.

On December 27, 2005, Dr. Dan Donahue completed a Psychological Review Technique Form (PRTF), indicating that plaintiff had moderate restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and no repeated episodes of decompensation, each of extended duration. (Tr. 175-188). Dr. Donahue also completed a mental RFC assessment opining plaintiff was not significantly limited in his ability to remember locations and work-like procedures, to understand and remember very short and simple instructions; to carry out very short and simple instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to make simple work-related decisions, to interact appropriately with the public, to ask simple questions or request assistance, to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; to be aware of normal hazards and take appropriate precaution and to travel in unfamiliar places or use public transportation. (Tr. 203-206). Dr. Donahue opined plaintiff was

moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. Dr. Donahue opined plaintiff was able to perform work where interpersonal contact is incidental to the work performed, for example assembly work; complexity of tasks is learned and performed by rote with few variables and little judgment; and supervision is simple, direct and concrete. (Tr. 205).

Progress notes dated February 15, 2006, report plaintiff's complaints of back and hand pain. (Tr. 189). Plaintiff reported back pain for several months at the lumbar area with increased pain when bending. Plaintiff reported he fractured his hand in August and has swelling at times. Plaintiff denied lower extremity numbness or weakness. Plaintiff was diagnosed with musculoskeletal pain.

Plaintiff entered the Washington Regional Medical Center emergency room on June 1, 2006, complaining of pain of gradual onset for the past two days. (Tr. 194). Plaintiff reported he was stacking ties and pulled a muscle in his lower back and was not able to go to work and needed a work excuse. Dr. Spencer noted a decreased range of motion and paraspinal and lateral muscle tenderness. Plaintiff exhibited no point tenderness on the spine and had a negative leg raise. Deep tendon reflexes were 2+ and motor and sensory were intact. An inspection of

plaintiff's upper extremity was normal. Plaintiff was diagnosed with back strain and given some 500mg Naprosyn. Plaintiff was instructed to advance activity as tolerated. (Tr. 196). The discharge notes report plaintiff ambulated without assistance and that he was transported via his own driving. Dr. Spencer opined plaintiff was able to continue with regular work duties. (Tr. 226).

Plaintiff entered the Washington Regional Medical Center emergency room on June 28, 2006, complaining of feeling bad since Sunday. (Tr. 214). Plaintiff presented from his work site. (Tr. 216). Plaintiff reported feeling shaky with numbness in his arms and dizziness. Plaintiff also reported a sharp pain on the right side of his chest earlier in the morning that lasted three seconds but he no longer had the pain. Plaintiff denied taking any medication. Treatment notes indicate plaintiff reported drinking two cases of beer plus whiskey daily for the last several years. (Tr. 221). Plaintiff verbalized that he intended to stop drinking "cold turkey" and was not interested in any intervention assistance. Plaintiff was diagnosed with near syncope and alcoholism, Methamphetamine abuse. A urinalysis indicated there was methamphetamine involved and it was recommended plaintiff seek treatment for alcoholism and substance abuse. Plaintiff was discharged home and transported via friend/family. (Tr. 216). Plaintiff was given a work excuse for the day. (Tr. 224).

### III.  **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

### A.     The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

AO72A
(Rev. 8/82)

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

### IV.　Discussion:

Plaintiff contends that the ALJ erred in concluding that the plaintiff was not disabled since September 25, 2006, his amended alleged onset date through the date of the ALJ's decision. Defendant contends the record supports the ALJ determination that plaintiff was not disabled through the date of the ALJ decision.

####　　　　A.　　　Subjective Complaints and Credibility Analysis:

In disability determinations, credibility assessments are the province of the ALJ. *Onstead v. Sullivan*, 962 F.2d 803, 805 (8th Cir. 1992). This court will not substitute its judgment for that of the trier of fact, *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain. *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003). We

-11-

believe the ALJ adequately evaluated the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and conclude there is substantial evidence supporting the ALJ's determination that plaintiff's complaints were not fully credible.

The record reflects plaintiff did not seek medical treatment during the relevant time period. However, medical records prior to plaintiff's amended alleged onset date show plaintiff sought treatment for right wrist pain in August of 2005, after injuring his wrist at work. The medical records show that by September of 2005, Dr. Parks noted x-rays of plaintiff's wrist showed excellent callus formation and good healing at the site. Dr. Park noted clinically plaintiff had no rotary deformity and his range of motion continued to improve. While plaintiff did report some aching, Dr. Park noted plaintiff was already back working full grip strength. In December of 2005, Dr. Conover noted while plaintiff's wrist was tender to palpation plaintiff had normal range of motion with no joint abnormalities. Plaintiff also had ninety-five percent grip strength. In February of 2006, plaintiff did report hand pain but no limitations were noted at that time. Based on the evidence of record we find substantial evidence of record to support the ALJ's determination that plaintiff does not have a disabling wrist impairment.

The medical record reflects plaintiff has also sought treatment for back pain. In December of 2005, Dr. Conover found plaintiff had full range of motion of his spine with no muscle spasm and normal straight leg raising. Plaintiff sought treatment in February of 2006, complaining of a pulled muscle in his lower back while stacking ties at work. Dr. Spencer noted a decreased range of motion and paraspinal and lateral muscle tenderness. Plaintiff exhibited no point tenderness on the spine and had a negative leg raise. Deep tendon reflexes were 2+ and motor and sensory were intact. Plaintiff was diagnosed with back strain and given some 500mg

Naprosyn tablets. While the record shows plaintiff may indeed experience some degree of pain due to his back, we find substantial evidence of record supporting the ALJ's finding that plaintiff does not have a disabling impairment. *See Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain). Furthermore, the record reveals plaintiff has not been prescribed medication for pain. *See Harris v. Barnhart,* 356 F.3d 926, 930 (8th Cir.2004) (determining that claimant's use of nonprescription pain medication is inconsistent with allegation of disabling pain).

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In December of 2005, plaintiff reported that he made sure his children were at the bus stop for school and that he took care of getting wood for his house. (Tr. 104). Plaintiff also reported to Dr. Chambers that his leisure activities consisted of hunting and fishing. (Tr. 163). At the time of the hearing in October of 2007, plaintiff reported he was able to watch his sister's child while she took the other children to school. (Tr. 259). He also testified he could make simple meals and tried to help out around the house. The record fails to establish that plaintiff is unable to take care of his personal needs or other activities of daily living.

With regard to plaintiff's alleged depression and panic attack with agoraphobia, the record fails to demonstrate plaintiff sought on-going and consistent treatment for a mental impairment. *See Jones v. Callahan*, 122 F.3d 1148, 1153 (8th Cir. 1997) (ALJ properly concluded claimant did not have a severe mental impairment, where claimant was not undergoing regular mental-health treatment or regularly taking psychiatric medications, and where his daily activities were not restricted from emotional causes). While plaintiff alleges he

has agoraphobia, at the administrative hearing, plaintiff's sister testified when she drove to Durham plaintiff would ride with her a lot and that sometimes she would leave plaintiff with their mother. This evidence does not support plaintiff's allegations of agoraphobia.

Although plaintiff contends that he could not to seek medical treatment due to finances, plaintiff has put forth no evidence to show that he has been denied treatment due to his lack of funds. *Murphy v. Sullivan*, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).

The ALJ also considered the testimony of plaintiff's sister. As the testimony of family members and friends need only be given consideration and need not be considered credible, the ALJ properly discredited the testimony of the witness. *Lawrence v. Chater*, 107 F.3d 674, 677 (8th Cir. 1997).

Therefore, although it is clear that plaintiff has some limitations, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

B.     **RFC Assessment:**

We next turn to the ALJ's assessment of plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

In the present case, when determining plaintiff's RFC, the ALJ considered the medical assessments of examining agency medical consultants, plaintiff's subjective complaints, and his medical records. The ALJ explicitly addressed the reason supporting his findings regarding plaintiff's ability to perform the activities required in the workplace. Based on the record as a whole, and the discussion above, we find substantial evidence to support the ALJ's RFC determination.

C.     **Hypothetical Proposed to Vocational Expert:**

Plaintiff contends that the ALJ did not properly take plaintiff's level of intellectual functioning into account when determining plaintiff could perform other work in the national economy.

-15-

After thoroughly reviewing the hearing transcript along with the entire evidence of record, we find that the hypothetical the ALJ proposed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Goff v. Barnhart,* 421 F.3d 785, 794 (8th Cir. 2005). We point out the ALJ clearly acknowledged plaintiff's level of functioning when he limited plaintiff to unskilled work. *Hillier v. Social Sec. Admin.*, 486 F.3d 359, 365-366 (8th Cir. 2007) (by limiting claimant to simple, concrete work, the ALJ captured the practical consequences of claimant's low average to borderline intellectual functioning). The court would also note plaintiff's past relevant work as a chicken catcher and a lumbar stacker also required the same intellectual level as the jobs the ALJ determined plaintiff was able to perform. *See* DICOT §§ 411.687-018 and 922.687-070 *at* www.westlaw.com.

Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff's impairments do not preclude him from performing other work as a packing machine operator, a sewing machine operator, a press operator, a poultry deboner and a poultry eviscerator. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Based on the foregoing, we recommend affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.**

**The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of August, 2009.

                                         /s/   *J. Marschewski*
                                         HON. JAMES R. MARSCHEWSKI
                                         UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)